UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CESAR MATEO,

                        Plaintiff,

        -against-

J. COREBINE, CORRECTION OFFICER,
CLIFFORD K. GUNSETT , CORRECTION
OFFICER,
SEAN D. CARLSON, CORRECTION OFFICER,
R. CLERC, CORRECTION SERGEANT,
CELL EXTRACTION TEAM, all members,
KEVIN O'CONNOR, CORRECTION
SERGEANT,
NEW YORK STATE DEPARTMENT OF
CORRECTIONS,
GREEN HAVEN CORRECTIONAL FACILITY,
GREEN MEADOW CORRECTIONAL
FACILITY,

                       Defendants.

09 Civ. 04811 (RJH) (DCF)

**MEMORANDUM OPINION
AND ORDER**

---

Richard J. Holwell, District Judge:

      Cesar Mateo ("Mateo"), a prisoner currently incarcerated at the Coxsackie Correctional Facility, has brought several actions *pro se* against various prison officials pursuant to 41 U.S.C. § 1983 ("Section 1983"). In this case, Mateo is suing several employees of the New York State Department of Correctional Facilities ("DOCS") and several institutions: Correction Officer Ronald J. Corbin ("Corbin"), Correction Officer Clifford K. Gunsett ("Gunsett"), Correction Officer Sean D. Carlson ("Carlson"), Correction Sergeant R. Clerc ("Clerc"), Correction Sergeant Kevin O'Connor ("O'Connor"), members of the "Cell Extraction Team," the New York State Department of Corrections, Green Haven Correctional Facility, and Great Meadow

1

Correctional Facility.[1]  All of the individual defendants worked at the Green Haven Correctional Facility ("Green Haven") while Mateo was incarcerated there.  Mateo raises claims of excessive force and conspiracy.  Defendants have moved to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons that follow, the Court converts defendants' motion to one for summary judgment and grants the converted motion.

## BACKGROUND

For the purposes of this motion, the following facts are taken as true:

The complaint stems from a February 6, 2009 incident involving a forced removal of the plaintiff from his cell.  On that date, at about 7:00 A.M., Correction Officer J. Adalian, not a party to this action, informed Mateo that he was to be moved to a different cell block to take part in a therapeutic program.  (Compl. ¶ 1.)  Mateo refused, and requested to be put in the facility's Special Housing Unit ("SHU") instead, for his own protection against potential retaliation and harassment. Defendant O'Connor then came with a team of officers, including defendants Corbin, Gunsett, Carlson, and Clerc, and told Mateo that if they entered the cell, they would "not be nice" to him.  (Compl. ¶ 2.)  Mateo insisted that his refusal to participate in the therapeutic program was "non-violent" and that he would take legal action if the officers inflicted harm, to which O'Connor responded that he did "not give a shit about lawsuit[s]."  (Compl. ¶ 2.)

Corbin, Gunsett, and Carlson entered the cell to extract Mateo.  As they did so, they struck the right side of Mateo's head, and handcuffed Mateo tightly.  (Compl. ¶ 8.)  Corbin and Gunsett then held him against the housing unit's heating system, while Clerc and Carlson observed.  (Compl. ¶¶ 11–12.)  This caused multiple injuries, including burns to Mateo's waist,

---

[1] The original complaint referred to Corbin as "J. Corebine," but beginning with the Amended Complaint, both parties have referred to him as "Ronald J. Corbin" instead.  This Court will do the same.

thigh, and penis foreskin, a dislocation of his jaw bone, and bruises, scratches, and pain in various other parts of his body.  (Compl. ¶¶ 14–16.)

Mateo filed a grievance regarding the incident on February 11, 2009.  (Compl. ¶ 17.)  That same day, he refused to participate in a disciplinary hearing about the inmate misbehavior report regarding the incident, at which he was found guilty of the misbehavior charged.  Mateo appealed the ruling and achieved a reduction from a 120-day sentence in the SHU with loss of privileges to a 60-day one.  (Compl. ¶ 20.)  In his appeal of the disciplinary hearing's findings, Mateo also requested relief on the claims he had presented in his grievance.  (Compl. ¶ 21.)

On February 26, 2009, Mateo was transferred to Upstate Correctional Facility ("Upstate"), where he alleges that "the correction sergeant that escorted the buss [*sic*] trip, at the entrance of the receiving room, threatened me not to write grievances, complaints, or else they will fuck with me."  (Compl. ¶ 23.)  At Upstate, Mateo also received a toaster oven, a contraband item for prisoners, which, according to him, had been planted in one of his property bags that arrived from Green Haven on March 3, 2009.  (Compl. ¶ 25.)

In March 2009, Mateo received the Superintendent's denial of his February 11 grievance.  (Compl. ¶ 19.)  Mateo did not appeal the denial.  (*Id.*)

## DISCUSSION

### I. Converting the Motion

On a motion to dismiss, the Court accepts the complaint's allegations as true and draws all reasonable inferences in the plaintiff's favor.  *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 692 (2d Cir. 2009).  Where a motion is premised on the plaintiff's failure to exhaust his administrative remedies, the Court considers whether nonexhaustion is clear from the face of the complaint.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (exhaustion is

an affirmative defense, so inmates need not specially plead or demonstrate it in their complaints). If nonexhaustion is clear, the motion to dismiss should be granted. *Shaw v. City of New York*, No. 08-3997, 2009 WL 1110789, at *3 (S.D.N.Y. Apr. 21, 2009) (quoting *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)). If it is not, the court may convert the defendant's motion to one for summary judgment "limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy*, 255 F. Supp. 2d at 251; *see* Fed. R. Civ. P. 12(b).

If the court chooses to convert the motion, it must "afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted). The court need not give formal notice of its intention if "the parties were . . . apprised of the likelihood of conversion by less formal or direct means and, in fact, had a sufficient opportunity to present the materials relevant to a summary judgment motion." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004); *see In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985) ("The essential inquiry is whether the [nonmovant] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.").

Here, the defendants claim that Mateo did not exhaust his remedies before filing this lawsuit. Mateo admits that he did not pursue an appeal of his grievance, but claims that his inaction was justified by fear of retaliation and harassment. (Compl. ¶ 19.) The Court will assume that nonexhaustion is not plain from the face of the complaint and treat defendants' motion as one for summary judgment limited to the issue of exhaustion. Formal notice to the

parties is unnecessary here, since defendants attached as exhibits to their motion the records they have of Mateo's appeals. (Bellamy Decl. Ex. 1.) All parties were on notice of the possibility of conversion; the defendants notified Mateo that the Court might choose to treat the motion to dismiss as one for summary judgment, and that to oppose it, Mateo would need to submit evidence, such as affidavits.

## II. Exhaustion

### A. The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that prisoners exhaust all available administrative remedies before pursuing a lawsuit in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (exhaustion is required for "all inmate suits about prison life"); *Booth v. Churner*, 532 U.S. 731, 734 (2001) (exhaustion required before filing a Section 1983 claim for monetary damages even though monetary damages are unavailable as an administrative remedy). To properly exhaust a claim, a prisoner must comply with state grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Merely "[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion." *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (internal quotation marks and citation omitted). An "untimely or procedurally defective" administrative grievance also does not constitute proper exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006).

In New York, prisoners must exhaust all levels of the three-tiered grievance procedure: first, the prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC"). 7 N.Y. Comp. Codes R. & Regs. § 701.5(a)(2) (2009). Second, the prisoner may appeal an adverse IGRC decision to the facility superintendent, and third, the prisoner may appeal an adverse decision by the superintendent to the Central Office Review Committee ("CORC"). *Id.* §§ 701.5(b)–(d). An expedited procedure exists for grievances that allege harassment by prison staff: the grievance is sent directly to the superintendent, and, if the grievance "is a bona fide harassment issue, the superintendent must initiate or request an investigation and render a decision, after which the prisoner could then appeal to the CORC." *Id.* § 701.8(c)–(d); *see Espinal v. Goord*, 558 F.3d 119, 125 (2d Cir. 2009) (internal citation omitted). In the absence of any decision, the prisoner can appeal directly to CORC within twenty-five days. 7 N.Y. Comp. Codes R. & Regs. § 701.8(g).

When a prisoner fails to properly exhaust his administrative remedies before filing suit, the action must be dismissed. *See Burgos v. Craig*, No. 06-5505, 307 Fed. Appx. 469, 470 (2d Cir. 2008) ("[Exhaustion] must be completed before suit is filed, and completing the exhaustion requirements only after filing suit is insufficient."); *Neal v. Goord*, 267 F.3d 116, 121–22 (2d Cir. 2001), *abrogated in part on other grounds by Porter*, 534 U.S. 516. Dismissal is without prejudice, and the case may be refiled once the plaintiff has exhausted his remedies. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009); *Chisholm v. New York City Dep't of Correction*, 2009 WL 2033085, at *3 (S.D.N.Y. July 13, 2009).

Here, Mateo fully exhausted the appeals on his disciplinary hearing, (Def. Memo. 10–11), but plainly admits that he did not exhaust the appeals process for his grievance, since he had

never appealed the decision to CORC. (*See* Compl. ¶ 19.) Instead, Mateo asserts that his failure to exhaust the administrative remedy process is justified by his fear of retaliation.

### B. Exceptions to the Exhaustion Requirement

Although exhaustion of administrative remedies is mandatory under the PLRA, the Second Circuit has recognized that "in some circumstances, the behavior of the defendants may render administrative remedies unavailable." *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). Therefore, the Second Circuit has devised three exceptions to the requirement that the plaintiff exhaust administrative remedies. First, "the court must ask whether administrative remedies were in fact 'available' to the prisoner." *Id.* (citing *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)). This includes both an inquiry into whether "the prison provided grievance procedures that inmates . . . could utilize" and one into whether threats rendered "all administrative remedies unavailable" or "some procedures that would ordinarily be available [to be] effectively unavailable." *Id.* at 686–87. Second, the court should determine whether the defendants forfeited the defense by failing to raise or preserve it and whether the defendants' actions inhibiting the inmate's exhaustion of remedies would estop the defendants from raising the exhaustion defense. *Id.* at 686. Finally, the court "should consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'" *Id.* (quoting *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004)).[2]

---

[2] There is some doubt as to whether the *Hemphill* line of analysis has survived *Woodford v. Ngo*, 548 U.S. 81 (2006), and the Second Circuit has yet to decide the issue. *See Macias v. Zenk*, 495 F.3d 37, 43 n.1 (2d Cir. 2007) (declining to decide "what effect *Woodford* has on *Hemphill*'s holding that where administrative procedures are confusing 'a reasonable interpretation of prison grievance regulations may justify an inmate's failure to follow procedural rules to the letter.'") (quoting *Hemphill*, 380 F.3d at 690); *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 178 (2d Cir. 2006) ("We need not determine what effect *Woodford* has on our case law."). In *Woodford*, the

Mateo's reasons for failing to exhaust his administrative remedies fall into two categories: his use of the appeals process for his disciplinary hearing and his fear of retaliation. (*See* Compl. ¶¶ 19, 21.)  When a plaintiff proceeds pro se, as here, this Court is "obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).  So construed, Mateo argues that all three of the *Hemphill* exceptions ought to apply in this case.

Mateo has not alleged that the grievance process was actually unavailable to him under the first *Hemphill* exception. Administrative remedies, however, can be "nominally available [but] not so in fact." *Hemphill*, 380 F.3d at 687.  The test for this part of the first *Hemphill* exception "must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill*, 380 F.3d at 688.  Mateo's allegations of fear speak most directly to this exception.  Although Mateo had been transferred out of Green Haven, the facility in which the events in question happened, to Upstate by the time he received the superintendent's denial of his grievance, he nevertheless asserts that he "feared further physical retaliation and harassment" if he continued the grievance process.  (Compl. ¶ 19.)

According to Mateo, events occurring at Upstate were threats of potential retaliation for appealing his Green Haven grievance because Upstate correction officers were "colluding" with Green Haven officers.  (Compl. ¶ 19.)  Because the Upstate correctional officers were "part of an ongoing conspiracy against [Mateo] . . . initiated and maintained by correction staffs at Green

---

Supreme Court held that prisoners must "properly" exhaust administrative remedies, which entails "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90–91. Courts in this circuit have acknowledged the tension between *Woodford* and the *Hemphill* analysis, but have continued to use the *Hemphill* test in the absence of circuit authority to the contrary. *See, e.g.*, *Harrison v. Goord*, No. 07-1806 (HB), 2009 WL 1605770, at *6 n.6 (S.D.N.Y. June 9, 2009); *Winston v. Woodward*, No. 05-3385 (RJS), 2008 WL 2263191, at *6 (S.D.N.Y. May 30, 2008) (applying the three exceptions and collecting district court cases doing the same).  This Court will do likewise.

Haven," (Compl. ¶ 28), he argues that it is irrelevant that those actors who are alleged to have hampered the appeal of his grievance are not actually those against whom he filed the grievance; a grievance against one correction officer would offend all conspiracy members, and a threat from one is a threat from all.

Plaintiff's argument is unavailing.  Mateo alleges a conspiracy in only vague and conclusory terms, and fails to allege specific facts that would lead one of ordinary firmness to believe that the correction officers at Upstate acted in actual collusion with those at Green Haven.  *Cf. Mitchell v. Igoe*, 2009 WL 3165659, at *14 (N.D.N.Y. Sept. 25, 2009) (dismissing a conspiracy claim under 42 U.S.C. § 1983 for "assert[ing] claims of conspiracy in only vague and conclusory terms"); *Kellogg v. New York State Dept. of Correctional Services*, 2009 WL 2058560, at *6 (dismissing a conspiracy claim for failure to "include any allegations that would allow the Court to determine that there was an agreement amongst, or concerted action taken by, the Defendants"); *Nunez v. Goord*, 172 F. Supp. 2d 417, 431 (S.D.N.Y. 2001) (granting summary judgment on a retaliation claim for plaintiff's failure to "present any . . . specific or direct evidence supporting the existence of such a conspiracy" other than a supposed start date and temporal proximity).  Generally, Mateo asserts only that a "code of silence" exists among correction officers and that "defendants are assumed to be conspirator [*sic*] in the statetwide [*sic*] prison conspiracy acting against" him; that is, because all those involved are correction officers, they must have acted in concert as part of an active conspiracy.  (*See* Pltf.'s Opp. 5.)  The only specific allegation of communication between the Green Haven and Upstate staffs Mateo makes is one in which a toaster oven is erroneously included in the property bags sent from Green Haven to Upstate.  Because the oven was contraband, its presence "indicated to [Mateo] that correction staffs at Green Haven intended to have correction staffs at Upstate Correctional

9

Facility . . . continue the harassment and retaliation against [him]." (Compl. ¶ 25.) Beyond his bare assertions, however, Mateo fails to explain why the oven, or any other action taken by Upstate correction officers, should be interpreted as having been done at the behest of the defendant correction officers in this case. Such unsupported allegations cannot serve as the basis of finding Mateo's appeal to CORC effectively unavailable to one of ordinary firmness.

For similar reasons, estoppel is also unavailable as an exception to the nonexhaustion defense. Under the second *Hemphill* exception, the Court "must consider whether defendants' actions estop them from asserting plaintiff's failure to exhaust as an affirmative defense." *Winston v. Woodward*, 2008 WL 2263191, at *9 (citing *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004)). Here, however, Mateo has not alleged that the defendants have taken any action to estop them from asserting his failure to exhaust as a defense. Instead, Mateo has alleged only that non-defendant correction officers at Upstate have taken actions that may generally have caused him fear about filing grievances. Defendants are therefore not estopped from asserting nonexhaustion as a defense.

As to the third *Hemphill* exception, Mateo does argue that he believed his appeal of the disciplinary hearing would "provide relief of administrative remedies since this appeal was to be review [*sic*] by the Commissioner of New York State Department of Correctional Services at Central Office." (Compl. ¶ 21). Under the third exception, a "reasonable misunderstanding of the grievance procedures" will excuse a prisoner's failure to comply with the exhaustion requirement. *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). The Second Circuit has clarified that after the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006), the prisoner's conduct in such circumstances must both "put the prison officials on notice of his grievance '*in a substantive sense*,'" and also "*procedurally* exhaust his available administrative

10

remedies." *Macias*, 495 F.3d at 43 (citing *Johnson v. Testman*, 380 F.3d 691, 698 (2d Cir. 2004)).  Therefore, the "mere mention of a constitutional claim during plaintiff's disciplinary hearing" is insufficient to exhaust the prisoner's administrative remedies, as it fails to "fulfill his procedural exhaustion requirement by 'compl[ying] with the system's critical procedural rules.'" *Chavis v. Goord*, 2007 WL 2903950, at *9 (N.D.N.Y. 2007) (Peebles, M.J.) (quoting *Woodford*, 126 S.Ct. at 2388).

Here, Mateo has not alleged that the procedural exhaustion requirement was so confusing that he believed that the disciplinary proceeding was his only available path for relief; indeed, Mateo also initially pursued a formal administrative grievance regarding the incidents of this case.  Rather, Mateo has alleged only that he "believ[ed]" that "includ[ing] references to the excessive used [*sic*] of force, conspiracy, injuctive [*sic*], [and] declaratoy [*sic*] relief claims" would "provide some relief."  (Pltf.'s Opp. 5–6.)  Without more, such allegations fail to satisfy both parts of the *Macias* test regarding a prisoner's use of an alternative grievance method; although Mateo may have substantively put prison officials on notice of his complaints, he failed to use the formal grievance process fully or show that he reasonably believed that an appeal of the disciplinary proceedings was the only remedy available to him.  None of the three *Hemphill* exceptions, therefore, applies to Mateo's case, and he has failed to exhaust his administrative remedies as required by the PLRA.

In cases involving unexhausted claims, such as this one, the law is "clear that the appropriate disposition of unexhausted claims is dismissal without prejudice." *Mitchell v. Dep't of Correction*, 2008 WL 744041, at *6 (S.D.N.Y. Feb. 20, 2008) (Pitman, M.J.); *Doe v. Goord*, 2004 WL 2829876, at *8 (S.D.N.Y. Dec. 10, 2004) ("Dismissal of an action for failure to exhaust administrative remedies ordinarily is without prejudice.").  This is so even when the

issue is decided on a motion for summary judgment. *See Amador v. Superintendents of Dept. of Correctional Services*, 2007 WL 4326747, at *8 (S.D.N.Y. Dec. 4, 2007) ("I grant the Supervisory Defendants summary judgment as to the issue of exhaustion and these Plaintiffs' claims for injunctive and declaratory relief are hereby dismissed without prejudice."); *see also McCoy*, 255 F. Supp. 2d 233 (converting motion to dismiss to one for summary judgment and dismissing without prejudice). Such a remedy is appropriate because "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw." *Acosta v. Corrections Officer Dawkins*, 2005 WL 1668627, at *4 n.6 (quoting *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2003)). "If the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit. . . . In such circumstances . . . dismissal without prejudice is appropriate." *Id.* Here, therefore, the appropriate disposition is to dismiss Mateo's suit without prejudice to allow him an opportunity to refile after having exhausted his administrative remedies.

## CONCLUSION

Defendants have adequately demonstrated that Mateo failed to exhaust his administrative remedies before filing suit in federal court, and plaintiff has not plausibly explained why any exception to exhaustion should apply. For the reasons given above, the action is dismissed without prejudice. In the event that plaintiff has exhausted or does exhaust his administrative remedies fully, he may refile his complaint and reinstitute his suit.

SO ORDERED.

Dated: New York, New York

September 16, 2010

Richard J. Holwell
United States District Judge